■ In the Matter of ADVANCED THERAPY, OT, PT, SLP, PSYCHOLOGIST, REGISTERED PROFESSIONAL NURSE (RN), PLLC, Respondent, v NEW YORK STATE EDUCATION DEPARTMENT, Appellant. [34 NYS3d 226]—

Rose, J. Appeal from an order and judgment of the Supreme Court (DeBow, J.), entered April 29, 2015 in Albany County, which granted petitioner's application, in a proceeding pursuant to CPLR article 78, to annul a determination of respondent finding that there was no regional need for petitioner's preschool special education program.

Petitioner and nonparty Capital District Beginnings, Inc. (hereinafter Beginnings) are providers of preschool special education services for students with disabilities. In 2014, the Lansingburgh Central School District (hereinafter LCSD) advised respondent of its desire to end its contractual relationship with Beginnings—the provider of a Special Class in an Integrated Setting (hereinafter SCIS) program being offered at LCSD's Turnpike Elementary School—in order to enter into a new agreement with petitioner to operate the same type of program. When petitioner filed an application with respondent seeking approval to provide the SCIS program to LCSD, respondent's Special Education Quality Assurance (hereinafter SEQA) office contacted LCSD to determine whether there was a regional need for petitioner's proposal. LCSD explained that "there were enough preschool programs in the region to meet the need of the preschool students with disabilities in [the] district," but it sought to change the program provider at Turnpike Elementary. Based upon this response from LCSD, SEQA issued a determination of no regional need for petitioner's proposed program.

Petitioner then commenced this CPLR article 78 proceeding challenging respondent's determination of no regional need on the ground, among others, that, because it simply seeks to replace Beginnings and otherwise provide the same type of program for which a regional need had already been found, the fact that respondent required it to make an additional showing of regional need is, in and of itself, arbitrary and capricious. Supreme Court agreed with petitioner that it was not required

to show regional need and annulled respondent's determination. Respondent appeals, and we now reverse.

To begin, petitioner does not dispute that it failed to make a showing of regional need for its proposed program, and respondent argues that it rationally interpreted the Education Law and the accompanying regulations to require such a showing. Specifically, respondent contends that there is no statutory or regulatory mechanism for petitioner to step into the shoes of Beginnings and take over as the provider of Beginnings' previously-approved SCIS program. Rather, respondent reads the relevant regulations to provide that petitioner's proposal is actually a request to offer a second program in the region, which necessarily requires a showing of regional need prior to program approval (see 8 NYCRR 200.7 [a] [2] [i] [a]; 200.20 [a] [1]).

In reviewing respondent's interpretation, we are mindful that "[t]he construction given statutes and regulations by the agency responsible for their administration should be upheld if not irrational or unreasonable; courts will annul determinations based on such constructions only if they were affected by an error of law, were arbitrary, capricious or an abuse of discretion" (Matter of Cooke Ctr. for Learning & Dev. v Mills, 19 AD3d 834, 835 [2005], lv dismissed and denied 5 NY3d 846 [2005]; see Matter of Peckham v Calogero, 12 NY3d 424, 431 [2009]; Matter of Abramoski v New York State Educ. Dept., 134 AD3d 1183, 1185 [2015]). Here, respondent derives its authority to approve and regulate special education preschool programs from Education Law § 4410, which states, in pertinent part, that "[p]roviders of special services or programs shall apply to the commissioner for program approval on a form prescribed by the commissioner; such application shall include, but not be limited to, a listing of the services to be provided [and] the population to be served . . . . The commissioner shall approve programs in accordance with regulations adopted for such purpose" (Education Law § 4410 [9] [a]; see Education Law § 4410 [1] [b]; 8 NYCRR 200.1 [nn]). As the statute makes clear, it is the special education provider—not the school or school district in which the provider operates—that seeks and obtains approval from respondent for its own "specially designed . . . program[ ] . . . provided at no cost to the parent, to meet the unique needs of students with disabilities" (8 NYCRR 200.1 [ww]).

Once a provider's program is approved, nothing in Education Law § 4410 or its corresponding regulations expressly or impliedly binds the program to a particular site or transfers

control of the program to any other entity with whom the provider might collaborate. Indeed, the regulations confirm that an SCIS program is not necessarily tied to the facility in which it is located, as such a program is considered integrated if it is simply "housed in the same physical space as a preschool class of students without disabilities taught by a non-special education teacher" (8 NYCRR 200.9 [f] [2] [x]). Moreover, respondent's application forms for providers seeking SCIS program approval—which ask whether "the SCIS program [will] function in collaboration with another regular early childhood program"—support the view that special and regular education programs may work together, but remain separate entities with separate educational functions. The language of the regulations reinforces this interpretation (*see* 8 NYCRR 200.1 [nn], [pp], [qq], [uu], [vv], [ww], [xx], [yy]; 200.9 [f] [2] [x]). Accordingly, we conclude that where, as here, a private provider obtains respondent's approval to operate an SCIS program in collaboration with a regular preschool program located in a school district's facility, and the school district desires to end the collaboration, it is the provider, rather than the district, that retains control of the SCIS program.

Consistent with this interpretation, we agree with respondent's view that a school district's decision to end its relationship with an SCIS provider would not terminate the provider's approval to operate the program within a given region. As respondent correctly points out, program approval can only be terminated if respondent's commissioner finds "program or financial deficiencies," "violations of [s]tate [or] [f]ederal law[s] or regulations," or that "there is a clear and present danger to the health or safety of students" (8 NYCRR 200.7 [a] [3] [i], [iv]). Here, there is no evidence indicating that respondent could terminate its approval of Beginnings' program at Turnpike Elementary for any of those reasons. Thus, if LCSD chose to end its relationship with Beginnings, that action would have no impact upon respondent's approval of Beginnings' program, nor would it prevent Beginnings from finding another appropriate location and collaborator to continue the program elsewhere in the region. Petitioner would not be able to take over for Beginnings as provider of the previously approved SCIS program at Turnpike Elementary because, if Beginnings were to leave the facility, its SCIS program would leave with it. Under such circumstances, the actual effect of petitioner's proposal, if approved, would be to double the number of SCIS programs in the region. We therefore conclude that respondent rationally interpreted its regulations to require a determination of regional need in order to approve petitioner's proposed SCIS program (*see* 8 NYCRR 200.7 [a] [2]; 200.20 [a]).

As for petitioner's remaining arguments, we cannot agree that respondent's determination should be annulled because the "critical need" language of Education Law § 4410 (9) (a) (iii) is unconstitutionally vague. The SCIS program for which petitioner seeks approval is not a program that "includes only preschool children with disabilities" (Education Law § 4410 [9] [a] [iii]). Thus, the statutory provision that petitioner challenges is inapplicable to the facts of this case.* Nor, in our view, did respondent deprive petitioner of a constitutionally protected property interest (*see Bykofsky v Hess*, 107 AD2d 779, 781-782 [1985], *affd* 65 NY2d 730 [1985], *cert denied* 474 US 995 [1985]). Finally, we cannot conclude that respondent's determination of no regional need amounted to a violation of General Business Law § 340 (*see Shaw v Club Mgrs. Assn. of Am., Inc.*, 84 AD3d 928, 929 [2011]; *Neri's Land Improvement, LLC v J.J. Cassone Bakery, Inc.*, 65 AD3d 1312, 1315 [2009]; *Capitaland United Soccer Club v Capital Dist. Sports & Entertainment*, 238 AD2d 777, 779 [1997]).

Peters, P.J., Garry, Clark and Aarons, JJ., concur. Ordered that the order and judgment is reversed, on the law, without costs, determination confirmed and petition dismissed.

 ---

* For the same reason, we decline to address petitioner's additional argument that respondent's alleged failure to render its determination in accordance with Education Law § 4410 (9) (a) (iii) amounted to a reversible error of law.